[660 NYS2d 125]

CYNTHIA KARASEK, Respondent, v MYRA LAJOIE et al., Defendants, and ARLENE LEVINE, Appellant.

First Department, July 17, 1997

308

### APPEARANCES OF COUNSEL

*Anna Stern* for respondent.

*Peter A. Stroili* of counsel *(D'Amato & Lynch,* attorneys), for appellant.

### OPINION OF THE COURT

MURPHY, P. J.

As is here relevant, it is undisputed that in December 1991 plaintiff began treatment with defendant Arlene Levine, Ph.D., a licensed psychologist. It is further undisputed that plaintiff terminated her course of treatment with Levine some three months later, on March 5, 1992. The within action against Levine and two other mental health professionals was commenced on February 10, 1995. Levine has sought to have the action dismissed as against her upon the ground that it is time barred. In this connection, Levine maintains that the applicable limitations period is the two-year, six-month period prescribed pursuant to CPLR 214-a for actions sounding in medical malpractice. Plaintiff does not dispute the untimeliness of her action against Levine if the $2^{1}/_{2}$-year medical malpractice limitations period is applicable; her contention is rather that the applicable limitations period is not that prescribed for medical malpractice but the three-year period prescribed for ordinary negligence and malpractice, other than medical, podiatric or dental malpractice, pursuant to CPLR 214; and, indeed, if the three-year period is applicable it is clear that the action against Levine is timely.

In her complaint, plaintiff alleges that Levine "was, or represented herself to be a psychologist, licensed to practice psychotherapy in the State of New York and, as such, held herself out as duly qualified to render proper and adequate professional care and treatment to members of the general public, including plaintiff". She further alleges that Levine "undertook to provide treatment and care to the plaintiff in accordance with the accepted standards of care and treatment in the community" and that Levine departed from these stand-

ards by "failing to perform indicated procedures appropriate to plaintiff's condition and in failing to follow good practice". As a result of such departures from "good practice", Levine was said to have misdiagnosed plaintiff as suffering from a condition known as multiple personality disorder, and in reliance upon that erroneous diagnosis to have rendered treatment that was not merely inefficacious but harmful. Plaintiff claimed, as a consequence of such misdiagnosis and treatment, to have become severely depressed and disabled; Levine's diagnostic and treatment errors, it was said, compelled and would compel the plaintiff to seek further therapeutic care.

There can be no question that the above-described complaint does not sound in simple negligence. Indeed, the gravamen of the complaint is not that Levine breached some duty of ordinary care but that she breached the special duty she undertook in her professional capacity as a psychologist to provide care and treatment "in accordance with the accepted standards of care and treatment in the community". Plaintiff herself frankly characterizes the alleged breach as a departure from good practice which, of course, is only another way of expressing the concept of malpractice, and it may be noted, that plaintiff elsewhere in the record describes the course of treatment about which she complains quite simply as "malpractice".

The issue before us then is not whether the complaint alleges malpractice, for that it plainly and concededly does, but whether it alleges medical malpractice so as to bring it within the application of CPLR 214-a. The motion court, in denying Levine's motion, expressed the view that medical malpractice within the meaning of CPLR 214-a might only be committed by a medical doctor and, accordingly, could not be alleged against a psychologist such as Dr. Levine. The court was, we believe, in error.

In *Bleiler v Bodnar* (65 NY2d 65) the Court of Appeals held quite clearly that medical malpractice within the meaning of CPLR 214-a might indeed be alleged against someone who was not a medical doctor. There, an emergency room nurse was said to have taken an incomplete medical history from the plaintiff and the issue on appeal was whether the complaint against the nurse based upon this failure sounded in medical malpractice or ordinary negligence. In affirming the Appellate Division's determination that the allegations against the nurse did indeed sound in medical malpractice, the Court observed: "Obviously, not every negligent act of a nurse would be medi-

cal malpractice, but a negligent act or omission by a nurse that constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician constitutes malpractice. Such a conclusion is warranted here. Doctor Bodnar and Nurse Doe, who assisted him in the emergency room, are both charged with having failed to take a proper medical history—a crucial element of diagnosis and treatment. Bodnar's alleged failure to elicit all information pertinent to treatment could unquestionably constitute medical malpractice. The conclusion is no different with respect to the emergency room nurse, functioning in that role as an integral part of the process of rendering medical treatment to a patient" (at 72).

As can be seen, then, the dispositive consideration in determining whether an action sounds in medical malpractice does not, as the motion court thought, depend upon the vocational title of the alleged tortfeasor, but upon whether the allegedly tortious "act or omission * * * constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician" (*Bleiler v Bodnar, supra,* at 72; *accord, Weiner v Lenox Hill Hosp.*, 88 NY2d 784, 788).

The gravamen of the instant complaint is psychiatric misdiagnosis. And, as it is clear that the diagnosis of human illness, whether it be of the mind or body or some combination of the two, is integral to the practice of medicine,* it follows ineluctably that psychiatric diagnosis is an activity properly and squarely situated within the field of medical practice. This being the case, it must also follow that psychiatric misdiagnosis is a form of medical malpractice and, indeed, it has been expressly held that allegations of failing "to diagnose, record and treat [a] patient's [psychiatric] condition * * * sound in medical malpractice" (*Matter of Prince v State of New York,* 149 AD2d 963). If the instant allegations of psychiatric misdiagnosis had been made against a psychiatrist, i.e., a licensed physician, there would not be the slightest doubt that they stated a claim in medical malpractice. Nor, after *Bleiler (supra),* ought there to be any question that they state a claim sounding in medical malpractice, even though the diagnostician instead of being a psychiatrist happened to have been a fully licensed psychologist.

---

* The Legislature has, in fact, defined the practice of medicine as "*diagnosing,* treating, operating or prescribing for *any human disease,* pain, injury, deformity or physical condition" (Education Law § 6521 [emphasis added]).

This, of course, is not to say that every negligent act of a psychologist will be amenable to characterization as medical malpractice, only that where, as here, the alleged negligence occurs in the course of a psychologist's discharge of an essentially medical function directly related to the ensuing treatment of a particular patient's psychiatric illness, the alleged malpractice ought to be treated for Statute of Limitations purposes no differently than it doubtless would be if considered upon the merits at trial, namely, as medical malpractice. While plaintiff may, in the present context, protest that she does not plead medical malpractice, it is in the end medical malpractice that she will prove in order to prevail upon her claim.

Accordingly, the order of the Supreme Court, New York County (Karla Moskowitz, J.), entered on or about October 30, 1995, denying the motion to dismiss the complaint as against defendant Levine as time barred, should be reversed, on the law, without costs, the motion granted and the complaint dismissed as against defendant Levine. The Clerk is directed to enter judgment in favor of defendant Arlene Levine dismissing the complaint, without costs.

MAZZARELLI, J. (dissenting). Plaintiff received counseling sessions from defendant Levine, a licensed psychologist, between November 25, 1991 and March 5, 1992. On February 10, 1995, plaintiff commenced an action against defendants Lajoie, a licensed social worker, Levine, and defendant Mayer, an analyst. She alleged that Lajoie had misdiagnosed her as suffering from a multiple personality disorder in February 1990, and that Levine and Mayer had negligently adopted this incorrect diagnosis. The IAS Court denied Levine's motion to dismiss the action as time barred, expressly holding that a three-year Statute of Limitations applied, rather than the $2^{1}/_{2}$-year limitations period in CPLR 214-a.

The motion to dismiss was properly denied since the three-year Statute of Limitations in CPLR 214 (6), applicable to "an action to recover damages for malpractice, other than medical, dental or podiatric malpractice," governs here. We do not quarrel with the majority's assertion that the allegations in the complaint sound in malpractice, as they plainly do. However, we disagree with its conclusion that the misdiagnosis of a psychologist constitutes medical malpractice, as opposed to malpractice in general. CPLR 214-a does not define medical malpractice, but the Court of Appeals has described it as a "negligent act or omission * * * that constitutes *medical treat-*

*ment* or bears a substantial relationship to the rendition of medical treatment by a licensed physician" (*Bleiler v Bodnar*, 65 NY2d 65, 72 [emphasis added]; *see also, Scott v Uljanov*, 74 NY2d 673, 675).

In *Bleiler* (*supra*), the Court of Appeals clarified that medical malpractice extended to nurses and hospitals, recognizing that important tasks related to medical treatment were frequently assigned to nurses rather than doctors, and a hospital renders medical care through its physicians and medical staff (*supra*, at 69-71). That being the case, it made little sense to subject physicians to a different malpractice Statute of Limitations than a nurse or hospital (*supra*, at 70-71). Further, certain amendments to the Insurance Law, adopted in conjunction with CPLR 214-a, made clear that nurses and hospitals could be subject to malpractice claims (former Insurance Law § 335 [2] [a], as added by L 1975, ch 109, § 2).

The psychological counseling services provided by Levine, however, do not fall within the realm of medical treatment. There are no indications in the legislative history of CPLR 214-a, or the case law, that the services performed by psychologists were to be considered medical treatment. CPLR 214-a was adopted by the Legislature in 1975 as part of a comprehensive plan to address a malpractice insurance crisis for medical providers (*see, Bleiler v Bodnar, supra,* at 68-69). The provision of medical services by doctors and hospitals was threatened by their inability to obtain malpractice insurance at reasonable rates, and the Statute of Limitations for medical malpractice claims was shortened from three years to $2^{1/2}$ years in response (*supra*). Significantly, there are no indications that a similar problem existed in the field of psychological counseling, or that the statute shortening the limitations period was ever intended to cover psychologists.

CPLR 214-a has been amended on two separate occasions to include dentists and podiatrists (L 1985, ch 760, § 3; L 1986, ch 485, § 3), but not psychologists or other nonphysician counselors. That the Legislature did not include psychologists when expanding the professionals protected by this statute is persuasive evidence that they did not intend to do so (*see, Walker v Town of Hempstead*, 84 NY2d 360, 367; McKinney's Cons Laws of NY, Book 1, Statutes § 240 ["where a statute creates provisos or exceptions as to certain matters the inclusions of such provisos or exceptions is generally considered to deny the existence of others not mentioned"]).

The majority notes that the Legislature has defined the practice of medicine as "diagnosing, treating, operating or

prescribing for any human disease, pain, injury, deformity or physical condition" (Education Law § 6521). In our view, this broad definition neither establishes that psychologists engage in the practice of medicine, or that they do not. However, that the Legislature provided that only licensed physicians, or those under their supervision, may practice medicine (Education Law §§ 6522, 6525, 6526, 6542), and added a separate article in the Education Law related solely to the profession of psychology (see, Education Law, art 153, §§ 7600-7605), strongly suggests that it did not consider psychologists as practitioners of medicine. Moreover, the broad interpretation of medical treatment and medical malpractice adopted by the majority would presumably include services performed by an acupuncturist, a faith-healer and a cleric, a result plainly unintended by the statute.

Accordingly, since the action was commenced within three years of the date of plaintiff's last treatment by Levine, the claim was timely under CPLR 214 (6). We therefore dissent, and would affirm the IAS Court's denial of the motion to dismiss.

ANDRIAS and COLABELLA, JJ., concur with MURPHY, P. J.; TOM and MAZZARELLI, JJ., dissent in a separate opinion by MAZZARELLI, J.

Order, Supreme Court, New York County, entered on or about October 30, 1995, reversed, on the law, without costs, and the motion to dismiss the complaint as against defendant Levine granted.