OPINION OF THE COURT
 

 Titone, J.
 

 This is an action alleging malpractice in the provision of mental health services. The action was commenced against defendant Arlene Levine, a licensed psychologist, more than 2V2 years but less than three years after the last date of treatment. The question before us on this appeal is whether plaintiffs claim is essentially one for medical malpractice and is therefore time-barred under the shorter Statute of Limitations applicable to such claims
 
 (see,
 
 CPLR 214-a). Concluding that the professional services rendered to plaintiff by defendant Levine were not medical in character for purposes of determining the appropriate limitations period, we hold that the CPLR 214 (6) three-year period for “malpractice, other than medical, dental or podiatric” is applicable and that, consequently, the action is timely.
 

 According to the complaint and plaintiffs other written submissions, plaintiff, a wife, mother and successful artist, consulted defendant Myra LaJoie, a certified social worker, in the winter of 1990 because she felt that it was a propitious
 
 *173
 
 time for her to “confront the ordeals of [her] childhood and, thus, be enabled to put them behind [her].” LaJoie diagnosed plaintiff, who had no prior history of mental illness, as suffering from a multiple personality disorder. LaJoie attempted to treat plaintiff for this disorder, but her efforts were unsuccessful and plaintiff allegedly began to suffer depression and anxiety because of the treatment. As a result, plaintiff’s marriage, family life and career as a sculptor deteriorated.
 

 LaJoie began collaborating with defendant Levine in the summer of 1991 because of the latter’s expertise in hypnotherapy and multiple personality disorder. By November of 1991, Levine was meeting directly with plaintiff, leading to the termination of plaintiff’s treatment with LaJoie. Between December 4, 1991 and March 5, 1992, Levine treated plaintiff for multiple personality disorder, apparently adopting LaJoie’s diagnosis despite plaintiff’s repeated protestations about the correctness of that assessment. Plaintiff’s problems worsened during this period as she became increasingly withdrawn from her family and ceased to function as a homemaker or artist.
 

 In February of 1992, LaJoie contacted plaintiff to acknowledge that she had learned from another multiple personality disorder expert, defendant Robert Mayer, that she had made certain mistakes in treating plaintiff. Following this conversation, plaintiff resumed therapy with LaJoie, continuing with her until the fall of 1992, when she began seeing Mayer, who treated her through May of 1993. Throughout the entire period of her treatment by LaJoie, Levine and Mayer, plaintiff’s condition worsened. Finally, through the assistance of a fourth therapist, Donna Lippman, plaintiff regained her emotional strength and mental stability.
 

 Plaintiff subsequently sued LaJoie, Levine and Mayer, alleging that those three professionals had negligently misdiagnosed her as having a multiple personality disorder and had thereafter treated her negligently, causing her to sustain serious emotional and mental harm. Defendant Levine, who was not served with the summons until March 28, 1995, moved for dismissal under CPLR 3211 (a) (5) on the ground that the action was time-barred under the 2
 
 [1]
 
 /2-year limitations period prescribed for medical malpractice (see, CPLR 214-a). Plaintiff opposed the motion, arguing that the action was timely under CPLR 214, the three-year Statute of Limitations that applies to other classes of professional malpractice.
 

 Supreme Court agreed with plaintiff and denied defendant’s dismissal motion. On appeal, however, the Appellate Division
 
 *174
 
 reversed and dismissed the complaint against Levine as time-barred. Relying on this Court’s decision in
 
 Bleiler v Bodnar
 
 (65 NY2d 65), the Appellate Division majority noted that health care providers other than doctors can be liable for medical malpractice and that, consequently, CPLR 214-a may be applicable to a malpractice claim against a nonphysician in a proper case. Since the diagnosis of human illness of all categories is “integral to the practice of medicine,” the Court concluded, “it must also follow that psychiatric misdiagnosis [by a psychologist] is a form of medical malpractice” subject to CPLR 214-a’s 2V2-year limitations period (231 AD2d 307, 310).
 

 Two Justices dissented, arguing that neither the legislative history of CPLR 214-a nor the Legislature’s treatment of the licensing of physicians and psychologists supports the view that the latter were intended to enjoy the benefits of the shortened limitations period for medical malpractice actions. The Appellate Division subsequently granted plaintiff permission to appeal to this Court, certifying the following dispositive question of law: “Was the order of this Court, which reversed the order of the Supreme Court, properly made?” We now reverse.
 

 CPLR 214-a provides that “[a]n action for medical, dental or podiatric malpractice must be commenced within two years and six months of the act, omission or failure complained of.” Despite the apparent simplicity of this language, the courts have periodically had to grapple with what constitutes “[a]n action for medical * * * malpractice” as distinguished from one for ordinary negligence or another form of professional malpractice by a health care provider (see,
 
 e.g., Weiner v Lenox Hill Hosp.,
 
 88 NY2d 784;
 
 Bamert v Central Gen. Hosp.,
 
 53 NY2d 656,
 
 affg
 
 77 AD2d 559;
 
 see generally,
 
 McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR, C214-a:l, at 593-597; Alexander, 1997 Supp Practice Commentaries,
 
 op. cit.,
 
 1998 Pocket Part, at 161-162; McLaughlin, 1990 Supp Practice Commentaries,
 
 op. cit.,
 
 1998 Pocket Part, at 172).
 

 In
 
 Bleiler v Bodnar
 
 (65 NY2d 65,
 
 supra),
 
 for example, this Court was called upon to decide whether the alleged failure of an emergency room nurse to obtain a patient’s medical history could be deemed “medical malpractice” within the meaning of the statute. Answering that question in the affirmative, we held that the limitations period established by CPLR 214-a may apply to acts or omissions committed by individuals and entities other than physicians where those acts or omissions ei
 
 *175
 
 ther constitute medical treatment or bear a substantial relationship to the rendition of medical treatment (65 NY2d, at 72;
 
 accord, Weiner v Lenox Hill Hosp., supra,
 
 at 788).
 

 Although
 
 Bleiler
 
 settled the question of
 
 who
 
 may be covered by the provisions of CPLR 214-a, the Court’s holding in that case does not address the separate question of what categories of health-related activity constitute “medical treatment” or bear a “substantial relationship” to the rendition of such treatment. It has been suggested that Education Law § 652l’s definition of the “practice of medicine” — i.e., “diagnosing, treating, operating or prescribing for any human disease, pain, injury, deformity or physical condition” — is a useful touchstone in resolving this question (McLaughlin, Practice Commentaries,
 
 op. cit.,
 
 at 594). This definition, however, is of limited utility in this context, since it was drafted in connection with the licensing of physicians and was not necessarily meant to be used in the interpretation and application of other unrelated statutory provisions
 
 (see, Bleiler v Bodnar, supra,
 
 at 70).
 

 Moreover, to use Education Law § 652l’s expansive definitional provisions as a template for assessing the health care activities of nonphysicians under
 
 Bleiler,
 
 as the Appellate Division majority did, would lead to wildly overinclusive results, since there are many alternative and nontraditional approaches to “diagnosing [and] treating * * * human disease,” and many of these are clearly nonmedical in nature. That concern has particular force in the area of “human disease” involving mental rather than somatic ailments, where such diverse professionals as psychiatrists, social workers, clerics, guidance counselors, substance abuse counselors, lay therapists and faith healers may play a part in the diagnosis and treatment process. Surely, not all diagnostic and treatment activities undertaken by this range of practitioners are properly classified as “medical.” Thus, it is apparent that the broad approach adopted by the Appellate Division is unsatisfactory and that a closer analysis is required.
 

 Unfortunately, the existing authority on the subject is sparse. With respect to the specific mental health related activities of psychologists, article 153 of the Education Law provides for the licensing of psychologists, but, unlike the statutory analogue for social workers (Education Law art 154) and physicians (Education Law § 6521), it does not contain a provision describing the permissible scope of the licensees’ practice
 
 (see,
 
 
 *176
 
 Education Law § 7701).
 
 [1]
 
 In the absence of such a defining provision, it is difficult to even begin to assess the extent to which psychologists are engaged in medical activities.
 

 More importantly, although she has repeatedly asserted that she furnished “medical” diagnosis and treatment to plaintiff, defendant Levine has not suggested a viable approach to distinguishing between medical and nonmedical mental health care, much less a specific analytical structure that would bring her diagnostic and treatment activities within the former category. That defendant psychologist was called upon “to perform extraordinarily difficult mental health care tasks” or that her performance was to be measured against the accepted standards in the mental health care community, as defendant contends, establishes only that the services she furnished were
 
 professional
 
 ones subject to a claim of professional malpractice. Those characteristics of her practice do not support the additional proposition that her services were classifiable as
 
 medical
 
 services or that plaintiffs claim was one sounding in
 
 medical
 
 malpractice.
 

 In sum, while it may be reasonable to infer that the diagnostic and treatment services provided by — or under the supervision of — medically trained psychiatrists are “medical” in nature, the same cannot be said about the services rendered by psychologists and other mental health care professionals, whose training and professional experience are much more diverse.
 
 [2]
 
 There may be some similarities in the methods used by psychiatrists and other mental health care professionals, including psychologists; indeed, there are several statutes contemplating that psychologists and psychiatrists may provide some of the same mental health related services
 
 (see, e.g.,
 
 CPL 60.55 [2]; 65.20 [7]; 400.27; Judiciary Law § 35 [4]; Mental Hygiene Law § 7.35).
 
 [3]
 
 However, in the final analysis, once the element of medical training is removed, there is no meaningful
 
 *177
 
 way to distinguish among the mental health services provided by the various nonphysician providers for purposes of classifying some subgroup of those services as “medical.” Thus, we are persuaded that, absent further legislative clarification, the sounder course is to hold that the services provided by psychologists, however scientifically based they may be, are not “medical” services within the meaning of CPLR 214-a.
 

 Our conclusion that defendant psychologist’s services were not medical and that plaintiffs claim is therefore not one for “medical malpractice” does not impair the holding in
 
 Bleiler v Bodnar (supra)
 
 that, in the area of somatic health care, professionals other than licensed physicians may be liable for “medical malpractice” within the meaning of CPLR 214-a. Our holding in this case merely reflects the fact that, in general, the
 
 Bleiler
 
 analysis cannot sensibly be applied to the field of mental health services — with its variegated diagnostic and treatment methods and its diverse group of independent practitioners. Indeed, it requires a journey on wholly uncharted waters to attach a “medical” label to the diagnosis and treatment of a mental disease, which may or may not have a somatic component, by a nonphysician provider professional, who may or may not have any training in somatic disease.
 

 In view of the analytical difficulty of separating the medical from the nonmedical services furnished by mental health care professionals and in view of the complexity of the underlying policy considerations, we deem it appropriate to defer to the Legislature in resolving the question whether — and which— nonpsychiatric health care providers should be afforded the benefit of CPLR 214-a’s truncated limitations period. We find support for such deference in the history of CPLR 214-a itself, which has been amended over the years to include malpractice claims against health care providers whose services were not unambiguously medical in nature. In 1985, for example, the statute was amended to extend its benefits to dentists (L 1985, ch 760). It was amended again in 1986 to include podiatrists (L 1986, ch 485). Significantly, in each instance, the Legislature was motivated by a perceived need to provide the named professionals with an added litigation advantage in order to combat unreasonable increases in malpractice insurance rates
 
 (see,
 
 Senate Sponsor’s Letter to Governor’s Counsel, July 1, 1986,
 
 *178
 
 Bill Jacket, L 1986, ch 485; Sponsor’s Mem [undated], 1985 NY Legis Ann, at 270; Senate Sponsor’s Letter to Governor’s Counsel, June 28, 1985, Bill Jacket, L 1985, ch 760).
 

 Defendant psychologist has offered no evidence in this case that similar increases in psychologists’ malpractice insurance premiums have occurred or that a shortened Statute of Limitations is a necessary or appropriate means of remedying the problem. Even if she had made such a showing, our limited role in the statutory construction arena would preclude us from extending the reach of the existing statute to accommodate such policy considerations.
 

 Inasmuch as there is no reason to conclude that the psychological services defendant Levine provided were “medical” or that plaintiff’s claim against her is one for “medical” malpractice, the 2V2-year Statute of Limitations applicable to such claims cannot be invoked. The claim against Levine, which was brought within three years of the last date of treatment, is therefore timely under CPLR 214 (6), and the decision of the Appellate Division to dismiss that claim was error.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, the complaint against defendant Levine reinstated and the certified question answered in the negative.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order reversed, with costs, defendant Levine’s motion to dismiss the complaint denied and certified question answered in the negative.
 

 [1]
 

 . During the past legislative session, the Legislature declined to adopt a bill that would have defined the scope of psychologists’ practice (1997 NY Senate-Assembly Bill S 7692-B, A 11223-B).
 

 [2]
 

 . Unlike psychiatrists, psychologists do not have the ability to perform many of the traditional medical functions including prescribing psychotropic drugs for those patients whose conditions warrant such treatment
 
 (see,
 
 Education Law § 6520).
 

 [3]
 

 . Significantly, even in instances where psychiatrists and psychologists have been deemed authorized to perform similar tasks, the services provided by the latter have been labelled “nonmedical”
 
 (see, e.g., People v Scala,
 
 128 Misc 2d 831, 838;
 
 People v Gans,
 
 119 Misc 2d 843, 844; Mental Hygiene Law § 9.37 [distinguishing between psychiatric and psychological evaluation and
 
 *177
 
 referring to the latter as not including a “medical” examination]; see
 
 also,
 
 Annotation,
 
 Qualification of nonmedical psychologist to testify as to mental condition or competency,
 
 78 ALR2d 919).