[981 NYS2d 5]

Nancy Perez et al., Appellants, v Jane M. Fitzgerald, D.C., et al., Respondents.

First Department, February 6, 2014

**APPEARANCES OF COUNSEL**

*Sullivan Papain Block McGrath & Cannavo, P.C.*, New York City (*Susan M. Jaffe* and *Stephen C. Glasser* of counsel), for appellants.

*Kaufman Borgeest & Ryan LLP*, Valhalla (*Jacqueline Mandell* of counsel), for respondents.

**OPINION OF THE COURT**

SWEENY, J.

This issue before us is whether the 2½ year time limitation in which to commence medical, dental or podiatric malpractice actions set forth in CPLR 214-a applies to chiropractic malpractice actions. For the reasons stated herein, we hold that it does not.

In May 2005, plaintiff was involved in a car accident. She presented to defendant Jane Fitzgerald, D.C., complaining of pain in her neck radiating down to the arms. Dr. Fitzgerald ordered an MRI on May 24, 2005. Dr. Fitzgerald testified that she read and relied on the radiologist's report, but did not personally review plaintiff's MRI films. The radiologist's report, which Dr. Fitzgerald received on May 25, 2005, stated that plaintiff had a number of herniated or bulging discs in her neck. There was no indication in that report that the MRI showed a tumor in plaintiff's spine. The failure to diagnose this condition is the gravamen of this action.

In July 2006, over four visits, Dr. Fitzgerald again treated plaintiff for complaints of neck pain and bilateral hand numbness. During these visits, Dr. Fitzgerald adjusted plaintiff's neck; however, she did not order another MRI.

From February 2005 through April 2007, plaintiff was also seeing various physicians with complaints of hyperthyroidism, high blood pressure and cholesterol, as well as yearly well-care

visits with her primary physician. Plaintiff did not tell any of these physicians about her back and neck pain, and hand tingling and numbness. She testified that she considered Dr. Fitzgerald, her chiropractor, for treatment of those issues.

In mid-late 2007, plaintiff saw a new chiropractor, a Dr. Senzamici, with the same complaints of back and neck pain and hand tingling and numbness. Since her condition was not improving, Dr. Senzamici recommended plaintiff see an orthopedist. Plaintiff asked her primary care physician for a referral and also requested that she order an MRI to bring with her to the new doctor.

This second MRI was taken in 2008, and plaintiff brought it to Dr. Olsewski, an orthopedic surgeon. Dr. Olsewski advised plaintiff that she had a tumor in her spine and recommended that she see a neurosurgeon immediately. She subsequently underwent surgery by Dr. Tabaddor.

Thereafter, an action was commenced against Dr. Fitzgerald alleging chiropractic malpractice. The verified complaint, filed in the Bronx County Clerk's office on June 29, 2009 alleges that defendant treated plaintiff continuously during the period commencing February 7, 2005 through April 20, 2007. The verified complaint further alleges that defendant departed from good and accepted standards of chiropractic practice by, inter alia, failing to exercise the degree of care, professional knowledge and training generally used by chiropractors in the community in the treatment of plaintiff; failing to properly follow up in the treatment of plaintiff; failing to order the appropriate diagnostic studies (i.e., a second MRI); failing to render a proper and timely diagnosis of plaintiff's condition (i.e., the tumor on plaintiff's spine); improperly performing chiropractic manipulation procedures; and improperly providing chiropractic care and treatment of plaintiff. The action was brought beyond the CPLR 214-a limitation period of 2½ years, but within the three-year limitation of CPLR 214 (6).

At the close of plaintiff's case, and again after trial, defendant moved to dismiss the complaint as time-barred, arguing the limitation period of CPLR 214-a was applicable to this action. The court reserved decision for posttrial briefing. The jury found that defendant departed from accepted chiropractic practices by failing to refer plaintiff for a second MRI in July 2006.

Thereafter, defendant renewed her motion to dismiss, arguing that the shortened 2½ year statute of limitations of CPLR 214-a has been applied to other health care providers, such as nurses

and physical therapists and should also be applied to chiropractors. The trial court granted defendant's motion and dismissed the complaint.

CPLR 214-a provides that "[a]n action for medical, dental or podiatric malpractice" must be commenced within 2½ years of the alleged negligent act or omission. All other professional malpractice actions are governed by the three-year statute of limitations found in CPLR 214 (6). CPLR 214-a was originally enacted in 1975 as part of a comprehensive plan amending the Public Health Law, Insurance Law, Workers' Compensation Law, Judiciary Law, Education Law, CPLR and Business Corporation Law. This was done in response to concerns about the high cost and potential unavailability of medical malpractice insurance in New York State (Mem of St Exec Dept, 1975 McKinney's Session Laws of NY at 1601-1602). Its enactment reduced the time for bringing a medical malpractice action from three years to 2½ years. The term "medical malpractice" was not defined in the new statute.

In 1985, the Court of Appeals in *Bleiler v Bodnar* (65 NY2d 65 [1985]) addressed the issues of whether, and under what circumstances, hospitals and nurses fall within the purview of "medical malpractice" and can thus obtain the benefit of the truncated statute of limitations. The Court established the now well-settled rule that a negligent act or omission by a health care professional may receive the benefit of the shortened limitations period if such professional was engaged in conduct "that constitutes medical treatment or bears a substantial relationship to the rendition of medical treatment by a licensed physician" (*id.* at 72).

After *Bleiler* was decided, the legislature twice amended CPLR 214-a to extend the protection of the shorter limitations period to actions for "dental malpractice" (L 1985, ch 760, § 3) and "podiatric malpractice" (L 1986, ch 485, § 3). There have been no further amendments.

The issue as to what categories of health-related activities constitute "medical treatment" or bear a "substantial relationship to the rendition of medical treatment by a licensed physician" under the standard established in *Bleiler* was addressed by the Court of Appeals in *Karasek v LaJoie* (92 NY2d 171 [1998]), in which the Court rejected the expansive definition of

the "practice of medicine" contained in Education Law § 6521*
as a basis for deciding whether the treatment in question was
medical, stating that to do so would "lead to wildly overinclu-
sive results" (*id.* at 175). In holding that "absent further legisla-
tive clarification," licensed psychologists do not provide "medi-
cal services" within the meaning of *Bleiler*, the Court adopted a
restrictive approach to the application of the shortened statute.
Relying in part on the legislative history of CPLR 214-a, the
Court concluded that the legislature's intent in enacting the
statute was to provide "the named professionals with an added
litigation advantage in order to combat unreasonable increases
in malpractice insurance rates" (*id.* at 177-178). The Court
made clear, however, that its conclusion was based in large part
on the nature of the mental health services provided in that
case, and specifically stated that its conclusion did not impair
the holding in *Bleiler* that, "in the area of somatic health care,
professionals other than licensed physician may be liable for
'medical malpractice' within the meaning of CPLR 214-a" (*id.*
at 177).

Further demonstrating the restrictive approach to the ap-
plication of CPLR 214-a, the Second Department has held that
the practice of optometry does not constitute the practice of
medicine (*Boothe v Weiss*, 107 AD2d 730, 730 [2d Dept 1985];
*see also Robinson v Meca*, 214 AD2d 246, 248-249 [3d Dept
1995]).

Prior to *Bleiler*, the few cases that addressed the issue of
whether chiropractic malpractice falls within the ambit of medi-
cal malpractice found that it did not (*see Faden v Robbins* 88
AD2d 631, 632 [2d Dept 1982] [holding that an action predicated
on chiropractic malpractice is not a "medical malpractice ac-
tion" for purposes of convening a medical malpractice panel];
*Vidra v Shoman*, 59 AD2d 714, 715 [2d Dept 1977] [holding
that "chiropractic treatment is a service distinct from medicine,
and that chiropractors do not practice medicine"]; *Rivera v City
of New York*, 150 Misc 2d 566, 567 [Sup Ct, NY County 1991]
[chiropractic expert's name need not be disclosed, since "(a)n
action predicated on chiropractic malpractice is not a medical
malpractice action"]).

Post *Bleiler*, the one case addressing chiropractic services
found that, on the facts of that case, the issue "as to whether

---

* Education Law § 6521 defines the practice of medicine as "diagnosing,
treating, operating or prescribing for any human disease, pain, injury, defor-
mity or physical condition."

defendant's services constituted medical treatment" was a question of fact for the jury (*Foote v Picinich,* 118 AD2d 156, 157 [3d Dept 1986]). *Foote* was premised on the *Bleiler* court's statement that health care providers other than physicians may be liable for medical malpractice. Other courts have found that claims against hospitals and medical corporations based on allegations that physical therapists, technicians, nurses, etc. committed "medical malpractice" fall within the ambit of CPLR 214-a where the treatment rendered by the health care providers was performed at the direction of a physician or pursuant to a hospital protocol which was part and parcel of patient care. In addition, the alleged injury was found to have occurred during the course of medical treatment where it bore a substantial relationship to treatment that was provided pursuant to a referral or prescription from a physician and thus fell within the ambit of CPLR 214-a (*see e.g. Spiegel v Goldfarb,* 66 AD3d 873, 874 [2d Dept 2009], *lv denied* 15 NY3d 711 [2010] [lab services performed at direction of physician held to be "crucial element" of plaintiff's diagnosis and treatment and thus were an "integral part of the process of rendering medical treatment"]; *Ryan v Korn,* 57 AD3d 507, 508 [2d Dept 2008] [burns received by application of heating pad during physical therapy held to be substantially related to her medical treatment]; *Meiselman v Fogel,* 50 AD3d 979 [2d Dept 2008], *appeal dismissed* 11 NY3d 783 [2008] [CPLR 214-a applied where claims against physical therapists arose from the use of various techniques, including the use of machines, that were held to be an integral part of rendering medical treatment]; *Pattavina v DiLorenzo,* 26 AD3d 167 [1st Dept 2006] [physical therapist exerted such force to plaintiff's back it herniated a disc]; *Levinson v Health S. Manhattan,* 17 AD3d 247, 247 [1st Dept 2005] [use of electrical stimulation machine by physical therapist "an integral part of the rendering of professional medical treatment"]; *Wahler v Lockport Physical Therapy,* 275 AD2d 906 [4th Dept 2000], *lv denied* 96 NY2d 701 [2001] [physical therapy held to be part of professional medical treatment]; *Pacio v Franklin Hosp.,* 63 AD3d 1130, 1133 [2d Dept 2009] [CPLR 214-a applied where plaintiff alleged that "licensed practical nurses, nursing assistants, patient care assistants, home health aides, and nutritionists" employed by defendant hospital failed to follow a protocol to prevent pressure ulcers, i.e., a protocol that bore a substantial relationship to the rendition of medical treatment]; *Morales v Carcione,* 48 AD3d 648 [2d Dept 2008] [CPLR 214-a

applied where technician employed by physician providing medical treatment for neuropathy]).

Here, plaintiff was not referred to Dr. Fitzgerald by a licensed physician and Dr. Fitzgerald's chiropractic treatment was not an integral part of the process of rendering medical treatment to a patient or substantially related to any medical treatment provided by a physician. Indeed, plaintiff did not even inform her physicians, including her primary care physician, that she was receiving chiropractic treatment for her neck and back. Further, the record establishes that the treatment provided by Fitzgerald, consisting of adjusting or applying force to different parts of the spine, massages, heat compression, and manipulation of plaintiff's neck, constituted chiropractic treatment (see Education Law § 6551). The fact that defendant provided treatment to the human body to address a physical condition or pain, which may be within the broad statutory definition of practicing medicine (Education Law § 6521), does not, by itself, render the treatment "medical" within the meaning of CPLR 214-a, since the use of such a broad definition would result in the inclusion of many "alternative and nontraditional approaches to 'diagnosing [and] treating . . . human disease' " which are clearly nonmedical in nature (Karasek v LaJoie, 92 NY2d at 175; compare Foote, 118 AD2d 156).

The common thread in the cases finding that CPLR 214-a applies is that the services were provided at the direction or request of a physician who was providing medical treatment to the particular patient, thus meeting the Bleiler standard and bringing them within the parameters of CPLR 214-a. Here, there is no doubt that Dr. Fitzgerald's treatment was separate and apart from any other treatment provided by a licensed physician and was not performed at a physician's request. Accordingly, as with the psychologist in Karasek, and the optometrist in Boothe, defendant is not entitled to invoke the benefit of the shortened limitations period applicable to medical, dental and podiatric malpractice, and is subject to the three-year statute of limitations of CPLR 214 (6). Plaintiff's chiropractic malpractice action was therefore timely commenced.

In light of the foregoing, we need not address plaintiff's remaining arguments.

Accordingly, the judgment of the Supreme Court, Bronx County (Kenneth L. Thompson, Jr., J.), entered September 12, 2012, dismissing the complaint, and bringing up for review an order, same court and Justice, entered August 22, 2012, which,

to the extent appealed from as limited by the briefs, granted defendants' cross motion to set aside the verdict on the ground that plaintiffs' claims were time-barred, should be reversed, on the law, without costs, the cross motion denied, and the verdict reinstated. The appeal from the aforementioned order, should be dismissed, without costs, as subsumed in the appeal from the judgment.

FRIEDMAN, J.P., ACOSTA and MANZANET-DANIELS, JJ., concur.

Judgment, Supreme Court, Bronx County (Kenneth L. Thompson, Jr., J.), entered September 12, 2012, and bringing up for review an order, same court and Justice, entered August 22, 2012, reversed, on the law, without costs, and the cross motion denied, and the verdict reinstated. The appeal from the aforementioned order, dismissed, without costs, as subsumed in the appeal from the judgment.