*Valentini v. Grp. Health Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of February, two thousand twenty-three.

PRESENT:

> AMALYA L. KEARSE,
> RICHARD J. SULLIVAN,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

_____

VALERIO VALENTINI, IN HIS INDIVIDUAL CAPACITY AND ON BEHALF OF HIS MINOR SON M.V., ESTATE OF KATHLEEN VALENTINI, VALERIO VALENTINI AS ADMINISTRATOR,

> *Plaintiffs-Appellants,*

v.                                                                   No. 22-157

GROUP HEALTH INCORPORATED, EMBLEM
HEALTH, INC., CARECORE NATIONAL LLC,
DBA EVICORE, JOHN DOES 1 AND 2,

*Defendants-Appellees.\**

_____

| | |
|---|---|
| **For Plaintiffs-Appellants:** | STEVE COHEN, Pollock Cohen LLP, New York, NY (Benjamin Battles, Pollock Cohen LLP, Burlington, VT, *on the brief*). |
| **For Defendants-Appellees:** | E. EVANS WOHLFORTH, JR., Gibbons P.C., Newark, NJ. |
| **For Amici Curiae American Medical Association, Medical Society of the State of New York, Vermont Medical Society, and Connecticut State Medical Society, *in support of Plaintiffs-Appellants*:** | Leonard A. Nelson, American Medical Association, Chicago, IL. |

Appeal from a judgment of the United States District Court for the Southern District of New York (John P. Cronan, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

---

\* The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

Valerio Valentini – in his individual capacity, on behalf of his minor son M.V., and as the Administrator of the estate of his late wife, Kathleen Valentini (collectively, the "Valentinis") – appeals from the district court's order dismissing the Valentinis' complaint against Group Health Incorporated ("GHI"), Emblem Health, Inc. ("Emblem"), CareCore National LLC, DBA eviCore ("eviCore"), and John Does 1 and 2 (collectively, the "GHI Defendants"). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

The Valentinis, due to Valerio's status as a retired New York City police officer, had health insurance through Emblem and its wholly owned subsidiary GHI.[1] In November 2018, Kathleen visited her primary-care physician because of pain in her right hip, and was prescribed several weeks of physical therapy, which GHI approved and paid for, along with over-the-counter pain medication. Despite completing that treatment, Kathleen's hip pain remained, and in late January 2019, her primary-care physician referred her to an orthopedic surgeon. On February 4, 2019, the orthopedic surgeon examined Kathleen, ordered a

---

[1] The facts recited herein are drawn from the Valentinis' complaint, the GHI Comprehensive Benefits Plan, and GHI and Emblem's February 16, 2019 letter to Kathleen. The district court determined that the policy and letter were incorporated by reference and integral to the complaint – which neither party contests on appeal.

magnetic resonance imaging scan ("MRI"), and contacted GHI to authorize payment. Upon receiving that request, GHI, through its subcontractor eviCore, conducted a preauthorization utilization review of Kathleen's records – the process by which GHI determines prior to a requested medical service whether that service is "medically necessary" and thus covered by the insurance policy. App'x at 162–68.

After that review, on February 16, 2019, Emblem and GHI issued an "[i]nitial [a]dverse [d]etermination" letter informing Kathleen and her orthopedic surgeon that they were "denying [the] request for coverage" of the MRI because eviCore had "determined that the service[] [was] not [m]edically [n]ecessary." *Id.* at 345–46. Citing eviCore's Musculoskeletal Imaging Guidelines, the letter stated that for patients like Kathleen, with "new or . . . chang[ing]" symptoms, advanced imaging such as an MRI would be covered only after the patient "failed to improve following a recent (within [three] months) [six-]week trial of doctor[-]prescribed treatment." *Id.* at 346. Noting that Kathleen's "records d[id] not show that [she] failed to improve following a [six-]week trial of treatment," the letter denied her request for coverage of an MRI but encouraged her to "talk to [her] doctor" if she had questions and notified her of her "right to file an appeal." *Id.* Given

4

Kathleen's prior course of treatment, the orthopedic surgeon appealed on her behalf, and GHI eventually reversed its determination. On March 14, 2019, Kathleen underwent the MRI, which revealed a sarcoma in her right hip. Thereafter, Kathleen's treating physician informed her that, had she been diagnosed a month earlier, she could have been treated with chemotherapy alone; instead, Kathleen's doctors were forced to amputate her leg, hip, and pelvis before beginning chemotherapy.

The Valentinis filed suit against the GHI Defendants in New York state court in October 2020, alleging negligence and medical malpractice (among other claims) stemming from the GHI Defendants' conduct during the utilization-review process. The GHI Defendants removed the case to federal court based on diversity of citizenship and subsequently moved to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Kathleen passed away shortly before the case was removed, and while the motion to dismiss was pending, her estate, with Valerio as administrator, was substituted as a plaintiff. On June 15, 2021, the district court dismissed several of the Valentinis' claims with prejudice, including the negligence and medical-malpractice claims, but granted the Valentinis leave to amend certain fraud-based claims. The Valentinis then filed a

5

second complaint with amended fraud-based claims, which the GHI Defendants again moved to dismiss. The district court granted that motion and entered final judgment.

The Valentinis timely appealed, challenging only the Rule 12(b)(6) dismissal of the negligence and medical-malpractice claims. We address in turn below the dismissal of each claim, reviewing the district court's decision de novo. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). Accordingly, we consider the legal sufficiency of the complaint, taking all factual allegations to be true and drawing all reasonable inferences in the Valentinis' favor. *Id.*

## I. Negligence

The district court properly dismissed the Valentinis' negligence claim as legally insufficient, finding that the GHI Defendants did not owe Kathleen a duty of care when conducting the utilization-review process.[2] Under New York law, which the parties do not dispute applies here, a plaintiff alleging negligence must demonstrate "(1) a duty owed by the defendant to the plaintiff, (2) a breach

---

[2] The Valentinis clarify in their reply brief that their negligence claim is for "the failure by GHI and eviCore to exercise reasonable care in conducting Kathleen's preauthorization review," not for "the[] failure to accurately *communicate* the results of their negligent review," i.e., not for providing medical advice or information through the denial of coverage. Reply Br. at 13 (emphasis in original).

6

thereof, and (3) injury proximately resulting therefrom." *Pasternack v. Lab'y Corp. of Am. Holdings*, 27 N.Y.3d 817, 825 (2016) (citation omitted). Whether or not a defendant owes a duty is a question of law. *See id.*

Generally speaking, a duty of care exists "[w]henever one person is by circumstances placed in such a position with regard to another that [everyone] of ordinary sense . . . would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to the circumstances[,] he would cause danger of injury to the person or property of the other." *Havas v. Victory Paper Stock Co.*, 49 N.Y.2d 381, 386 (1980) (citation omitted). That said, "duty is not something derived or discerned from an algebraic formula"; "[r]ather, it coalesces from vectored forces including logic, science, weighty competing socioeconomic policies[,] and sometimes contractual assumptions of responsibility." *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585 (1994); *see also Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232 (2001) (noting that "courts must be mindful of the precedential, and consequential, future effects of their [duty] rulings, and limit the legal consequences of wrongs to a controllable degree" (citation omitted)); *In re N.Y.C. Asbestos Litig.*, 27 N.Y.3d 765, 787–88 (2016) ("To discern whether a duty exists, the court must not engage in a simple weighing of equities,

for a legal duty does not arise whenever symmetry and sympathy would so seem to be best served." (internal quotation marks omitted)).

When the relationship between a plaintiff and an alleged tortfeasor also involves a contract, the complexion of the duty analysis is different. While "the line separating tort and contract claims may be elusive," New York courts look to factors such as the parties' relationship, the nature of the injury, the manner in which the injury occurred, and the resulting harm when determining whether a party can be sued as a tortfeasor for negligently performing contractual duties. *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 551–52 (1992). For example, in *Sommer*, the seminal New York case on the intersection of tort and contract duties, the Court of Appeals held that a building owner could bring *both* breach-of-contract and negligence claims against a fire-alarm company for the company's purportedly negligent failure to perform its contractual obligations, in part because the fire-alarm company "perform[ed] a service affected with a significant public interest" and "failure to perform the [contracted-for] service carefully and competently [could] have catastrophic consequences." *Id.* at 552–53.[3]

_____

[3] For the first time on appeal, the Valentinis characterize the GHI Defendants' conduct as a "negligent undertaking." This framing, however, does not meaningfully alter our duty analysis,

8

The New York Court of Appeals, though, "has been hesitant to expand *Sommer* into the realm of insurance law." Sp. App'x at 16. In *New York University v. Continental Insurance Co.*, the Court of Appeals noted that the additional tort duty in *Sommer* "arose from the very nature of [the fire-alarm company's] services – to protect people and property from physical harm" – and "the public interest in seeing [that service] performed with reasonable care." 87 N.Y.2d 308, 316–17 (1995). By contrast, because "governing the conduct of insurers and protecting the fiscal interests of insureds [was] simply not in the same league as the protection of the personal safety of citizens," the Court of Appeals refused to impose a tort duty for the allegedly negligent breach of a commercial-crime-liability insurance policy. *Id.* at 314, 317. Following that logic, at least one New York court has held that a healthcare insurer does not owe a duty of care to an insured while conducting preauthorization utilization review. *See Logan v. Empire Blue Cross & Blue Shield*, 714 N.Y.S.2d 119, 121–23 (2d Dep't 2000); *cf. also Klein v. Empire Blue Cross & Blue Shield*, 569 N.Y.S.2d 838, 841 (3d

---

as the negligent undertaking *of a contractual duty* would still need to be analyzed under the *Sommer* line of cases.

9

Dep't 1991) ("[T]he contract of insurance does not create a relationship for which a duty is owed to the plaintiff separate from the contractual obligation.").

Here, the provision of health insurance, and specifically the process of preauthorization utilization review, is no doubt a weighty responsibility that carries "possibly dispositive consequences for the course of treatment that a patient ultimately follows." *Cicio v. Does*, 321 F.3d 83, 98–99 (2d Cir. 2003), *vacated sub nom. Vytra Healthcare v. Cicio*, 542 U.S. 933 (2004). Still, preauthorization utilization review is not a service that subjects the *general public* to possible *physical harm* when performed without care – it is rather a service that ensures *financial reimbursement* of *individual insureds* for contractually covered medical services. *See Sommer*, 79 N.Y.2d at 551–53; *N.Y. Univ.*, 87 N.Y.2d at 316–17; *cf. Skelcy v. UnitedHealth Grp. Inc.*, 620 F. App'x 136, 144 (3d Cir. 2015) (noting that the insured at most relied on an insurance-company doctor conducting preauthorization review "to help him get reimbursed for his desired course of treatment"). As a result, we agree with the district court that existing New York caselaw cannot be stretched to justify extending tort liability to the (purportedly) negligent performance of contracted-for preauthorization utilization review.

10

The Valentinis make two primary arguments to the contrary, neither of which is persuasive. First, the Valentinis urge us to take a different view of New York caselaw, or else to certify the question to the New York Court of Appeals. But none of the other cases cited by the Valentinis casts meaningful doubt on the above conclusion.[4] And while we recognize that the New York Court of Appeals has not squarely decided whether a health insurer owes its insureds a duty of reasonable care when performing contractual obligations like the preauthorization utilization process, we find that we are nevertheless able to "predict" – based on *Sommer*, *New York University*, and other decisions by New York courts – "how the Court of Appeals would answer [that] question." *Ortiz v. Ciox Health LLC*, 961 F.3d 155, 158 (2d Cir. 2020) (citation omitted).

---

[4] *See, e.g.*, *Landon v. Kroll Lab'y Specialists, Inc.*, 22 N.Y.3d 1, 6–7 (2013) (holding that a laboratory company owed a duty to a probationer to conduct his drug tests reasonably, notwithstanding that it had no contractual relationship with the probationer, because unreasonable performance could result in the probationer's loss of freedom); *Roth v. Tuckman*, 558 N.Y.S.2d 264, 266 (3d Dep't 1990) (finding that a physician retained to render an evaluation for an insurer had a duty to conduct his examination of the insured with reasonable care, or else be potentially liable for reputational harm and severe pain and mental anguish accompanying the loss of benefits, but doing so based on inapposite cases involving insurer-hired physicians who negligently harmed patients in the course of physical examination or surgery); *DeMarco v. Fed. Ins. Co.*, 472 N.Y.S.2d 464, 466 (3d Dep't 1984) (imposing a duty on a health insurer to not commit intentional torts or fraudulently breach the duty of good faith and fair dealing, but only because such conduct would "go[] significantly beyond the kind of wrongful refusal by an insurer to pay benefits constituting only a breach of the insurance contract").

11

Second, the Valentinis assert that at the very least there was a factual dispute precluding Rule 12(b)(6) dismissal based on certain statements on eviCore's website characterizing the utilization-review process. This argument, however, has no basis in New York law, which makes clear that "the definition of the existence and scope of an alleged tortfeasor's duty is usually a legal, policy-laden declaration reserved for [j]udges to make prior to submitting anything to fact-finding or jury consideration." *Palka*, 83 N.Y.2d at 585. Consequently, there is no reason to remand for factfinding of the sort urged by the Valentinis.

## II.    Medical Malpractice

The district court also properly dismissed the Valentinis' medical-malpractice claim as legally insufficient. Under New York law, "liability for medical malpractice may not be imposed absent a physician-patient relationship, either express or implied, because there is no legal duty in the absence of such a relationship." *Kingsley v. Price*, 80 N.Y.S.3d 806, 809 (4th Dep't 2018) (citation omitted). As a corollary, New York courts have recognized that "[i]n the context of a physical examination conducted for the purpose of rendering an evaluation for a third party, such as an employer or insurer," a physician's conduct will be actionable as malpractice only if "the physician either affirmatively

12

treats the examinee or affirmatively advises the examinee as to a course of treatment." *Badolato v. Rosenberg*, 890 N.Y.S.2d 85, 86 (2d Dep't 2009); *accord Violandi v. City of New York*, 584 N.Y.S.2d 842, 843 (1st Dep't 1992); *Hickey v. Travelers Ins. Co.*, 558 N.Y.S.2d 554, 555–56 (2d Dep't 1990); *see also Karasek v. LaJoie*, 92 N.Y.2d 171, 174–75 (1998) (noting that a plaintiff can assert a medical-malpractice claim for conduct that "constitute[s] medical treatment or bear[s] a substantial relationship to the rendition of medical treatment").

Under these standards, the GHI Defendants' actions during the utilization-review process cannot form the basis of a medical-malpractice claim. The complaint's allegations relating to the GHI Defendants' communications with Kathleen and her doctor concerning the MRI, as well as the February 16, 2019 letter, show that none of the GHI Defendants ever affirmatively treated Kathleen or affirmatively advised her as to the course of her treatment; rather, GHI and Emblem simply informed Kathleen and her doctor that they were "denying [her] request for coverage" of the MRI because eviCore had determined that it was "not [m]edically [n]ecessary" as defined by her insurance policy. App'x 345–46; *see also id.* at 22–23. Although the complaint also cites statements on eviCore's website seeming to conceptualize its role in the utilization-review process as

13

providing advice to, and shaping the treatment of, insureds, these general statements do not preclude dismissal given the specific communications Kathleen received – which, again, conveyed only the GHI Defendants' coverage decision.

*　　*　　*

We have considered the Valentinis' remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

14